Morris, D. J.
This is a libel in personam by the libellant, who is the master of the Norwegian brig G-azellen, for the freight on a cargo of salt brought by the ship from Hamburg to Baltimore, and delivered to the respondents as indorsees of the bills of lading therefor. The ship received the cargo under a charter-party executed in Hamburg between the libellant and a merchant of that place named Kleimbst, who shipped that salt.
The answer alleges that the freight had been forfeited, for the reason that, by a stipulation contained in the charter-party, the ship was to be consigned at Baltimore to the respondents, who are ship-brokers, and that the libellant did not consign the ship to the respondents, but consigned her to another firm of ship-brokers at Baltimore, in breach of the charter-party, and without cause, in consequence whereof the respondents lost the fees and commissions for clearing the vessel, and procuring her a new charter for her homeward voyage, which they would otherwise have earned and received.
The answer alleges that by a well-known usage and agree *265 ment among ship-brokers in Baltimore they will not accept employment in obtaining an outward charter for any vessel already consigned to another broker, so that if the ship had been consigned to the respondents, as stipulated, they would have earned the commission of 2J per cent, paid for obtaining such outward charter, together with fees for clearing her for her homeward voyage; that by reason of the breach of said charter-party the said commission and fees were earned and received by another firm of ship-brokers, and that the ship was consigned to them for the purpose of enabling said firm to earn and receive said fees and commission, and with intent to deprive respondents of them.
The charter is for a voyage from Hamburg to Baltimore, and the stipulation is: “The ship is to be consigned to Dressel, Rauschenberger & Go., Baltimore, free of commission; * * penalty for non-performance of this charter-party, estimated amount of freight.”
The libellant having safely transported and delivered the cargo there can be no forfeiture of the freight, and the extent to which recoupment on account of breach of the charter-party could in any event now be allowed would be actual damages.
The evidence offered by the libellants did not tend to prove any usage or custom by which a ship-broker, to whom a vessel was consigned, would have an absolute right to procure for her an outward freight. On the contrary, the evidence tended to show that when a vessel is consigned, as in this case, “free of commission,” the ship-broker to whom she is consigned is not entitled to make any charge for attending to the business of the vessel while she is under that charter; and the only advantage to the ship-broker of having a vessel so consigned to him is that he has then the best chance of being employed by the master or owners to obtain for her an outward cargo, and that other ship-brokers would so far respect his position as consignee that, by common consent and usage, they would not interfere with him, and would refuse to take her out of his hands.
*266 It was admitted that the master or owner might himself procure a homeward charter if he could, and would not then be bound to pay a commission to any one; or, if he pleased and could find another broker who would act for him, he might employ another broker without incurring any liability to the consignee.
It was, therefore, only a probability of employment and consequent compensation which the respondents would have acquired by having the vessel consigned to them, with the certainty that the business of entering her on her arrival and such other service as they might perform while she was under the existing charter they would have to perform gratuitously. In the case of Phillips v. Briard, 1 H. & N. 21, the stipulation in the outward charter-party was, “the ship to be consigned to charterer’s agents in China free of commission on this charter;” language precisely similar in effect to the stipulation in the present case. The offer was to prove a usage by which consignees under such a stipulation were entitled to procure a homeward cargo for the ship and to charge the usual commission on the freight whether they procured it or not, provided they were prevented from procuring it by the owner or master procuring it himself or otherwise than through their agency.
But the court held that this usage was not admissible as against such a stipulation, as it would be adding to the plain language of the charter-party another and a different allegation, and would be in effect saying that because the vessel was consigned to the charterer’s agents “free of commission” on the outward voyage, they were to be entitled to a commission on the homeward cargo, whether they were employed to procure it or not, which would be not explaining but adding to the written contract.
Now, if there could be no recovery under the present stipulation — supposing the owner to have actually consigned the Bhip to the ship-brokers, and then to have, immediately on her arrival, put her into the hands of another broker — it is difficult to see what positive and certain damage could arise from the breach of the stipulation to consign her to them.
*267 The mere loss of an opportunity which might or might not have led to a profitable employment is too uncertain and speculative a damage on which to base a claim for breach of such a contract.
There was undeniably a breach of the charter-party. The ship was not consigned to Dressel, Rauschenberger & Co. as agreed. But if the ship had been consigned to them “free of commission, ” they would have acquired no legal right to perform any service or make any charge in respect to her, and the master could at any moment have declined to allow them to attend to the ship’s business; and the fact that he then might have found it difficult to get another ship-broker in Baltimore to serve him does not, I think, alter the result.
I therefore pronounce in favor of the libellant for the amount of the freight, with interest; but as there was a breach of the charter-party, and the owner should not have allowed the stipulation to be put in the contract if he did not intend to observe it, I yield to the suggestion of respondents’ proctor with regard to the costs, and shall give no costs.